[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Sylvia Meyer, of Norwalk, Connecticut, claims aggrievement in the statement of compensation filed by the defendant City of Norwalk on or about January 16, 1990, in regard to the taking of an easement on premises situated in said City of Norwalk at 31 Arbor Drive, bounded and described as follows:
 A PERMANENT EASEMENT over, through and upon a certain parcel of land situated on the corner of Arbor Drive and Soundview Avenue, in the City of Norwalk, County of Fairfield and State of Connecticut, which Easement is described as follows:
20' UTILITY EASEMENT "A" TO BE GRANTED CT Page 4978 AREA 1, 271 S.F., as more particularly shown and designated on that certain map entitled "Map Showing Utility Easement to Be Acquired By The City of Norwalk From Sylvia Meyer Norwalk, Conn. Scale 1" = 10' June 12, 1989", certified "Substantially Correct" Class A — 2' Accuracy by Leo Leonard, P.E. L.S. Conn. Reg. No. 2496, and is on file in the office of the Town Clerk of said of Town of Norwalk as Map No. 10959.
The statement of compensation filed by the defendant was in the amount of $12,000.00, including damages for the value of the taking in the amount of $11,000.00 and an additional amount of $1,000.00 representing rental value loss during the temporary period of construction of two months.
In such cases of a partial taking, the measure of damages is the difference in value of the property before and after the taking. Wakeman v. Commissioner of Transportation, 177 Conn. 432,435; "also, to be considered are any and all damages which will foreseeably follow from the proper construction of the project, including any damages to the remainder which are a necessary, natural and proximate result of the taking." Wakeman v. Commissioner of Transportation, (supra).
There is little need to discuss the testimony of the respective experts regarding the value of the property before the taking. The plaintiff's appraiser, Frank Brennan, testified that in his opinion the before value of the property was $200,800.00. The defendant's appraiser, Robert F. Wynn, stated the before value was $202,000.00. It was also stipulated that the rental value during construction affecting 50% of the use of the property was $1,000.00 per month.
The parties are in dispute as to the value of the taking, the value of the easement itself and the length of the construction period, all of which would necessarily impact on the value of the property after taking.
 I.
With respect to the value of the taking, plaintiff's appraiser, Brennan calculated this figure at $15,000.00, in contrast to the defendant's appraiser, Wynn, at $11,000.00. Brennan's based his figure of $15,000.00 on his experience over the years that a maximum limit of 15 to 20% of the entire property value can be attributable to landscaping. He calculated the lower figure of 15% due to the removal of front CT Page 4979 yard shade, screen and privacy. Fruit trees were removed or damaged. Lower branches of other trees were lopped off. Bushes were removed or damaged. Substantially, the use of the front yard for any family purposes was reduced to almost nil. Based on his opinion that one-half the total property area was affected by such loss of privacy and screening, he arrived at his figure of $15,000.00 for such loss.
The defendant's appraiser, Wynn, estimated the landscaping loss at $11,000.00. Unlike Brennan, he used a different set of comparables than were used in assessing the before-taking value of the property, attempting to locate properties which represented "similar bare or nearly bare house settings," more nearly comparable to the subject property's appearance after-taking. While such procedure is arguably, more appropriate, the court is not persuaded that Brennan's calculations should be discarded.
The court finds the value of the taking (landscaping loss) to be $15,000.00.
 II.
With respect to the value of the easement, some background information is necessary. The easement which is the subject of this appeal is a 20 foot utility easement running across the entire front of the plaintiff's property which is a corner lot located at Arbor Drive and Soundview Avenue. This 20 foot easement which included a 60 inch diameter storm drain was to replace an old ten foot easement which included a 36 inch storm drain, and was located much closer to the house. The 36 inch pipe in the old easement was not removed but was merely plugged at both ends.
It is the defendant's contention that no damages should attach to the taking of the new easement because of its abandonment of the old easement. This contention is refuted by the case of Roessler, Inc. v. Ives, 156 Conn. 131, 141-142 where it was held that "the right to abandon ceases when compensation has been paid or tendered or when the authorized appropriation of land for public use has actually taken place."
The question remains as to the damages attributable to the new easement. The easement is there, permanently, and is an encumbrance on the property. Brennan estimated the value of the new permanent easement at $18,000.00, some nine percent of the value of the property, for a number of reasons; the elimination of the front yard for future plantings, screening and privacy, the possibility of future construction in the 20 foot area, the difficulty of further building on the property, and, the CT Page 4980 combined effect of a new easement projected on the old. The defendant has disputed these contentions. There would be no useful purpose in recounting the respective arguments. Suffice it to say, the court must find that the presence of the new easement does have a negative effect on the after-taking value of the property. However, an appraisal of nine percent of the value of the entire property appears high. In the court's view, five percent would be a more equitable assessment. Using such revised percentage, and adopting Brennan's after the taking adjustment chart (pg. 41, Brennan Appraisal of "Damage" Report), results in an after the taking value of the property in the amount of $183,000.00.
The court finds that the value of the property after the taking is $183,000.00, or a difference of $17,800.00 between the value before and after the taking.
 III.
With respect to the temporary damages during construction, the parties stipulated that $1,000.00 was the fair market value of the monthly rental loss during construction. The dispute centers over the length of the required construction period. The plaintiff claims four months. The defendant claims two months. The two months difference, apparently came about because of the necessity of reseeding, replacing a section of cement walk, and replacing damaged sewer lateral caused by a contractor's negligence. Under the ruling of cases such as D'Addario v. Commissioner of Transportation, 172 Conn. 182, the plaintiff would be limited to a reassessment of damages caused by the taking, not by any complaints with respect to unsatisfactory grading, unsightly walks or the negligence of a contractor.
It was also agreed that the plaintiff was entitled to 50% of the fair rental value of the property due to inability to use the front yard during construction. The court finds that two months was the period of construction and that temporary damages for this period amounted to $1,000.00.
In conclusion, the court finds the value of the plaintiff's property before the taking to be $200,800.00, the value after the taking to be $183,000.00. The difference is $17,800.00 and the same is found as permanent damages. Temporary damages are found to be $1,000.00. The defendant has deposited in court, the sum of $12,000.00, leaving a balance to be paid of $6,800.00, together with interest at the statutory rate from January 16, 1990 to the date of payment. To this should be added the sum of $4,250.00 for Brennan's appraisal service and report and $500.00 for his testimony in court. CT Page 4981
Judgment may enter accordingly.
BELINKIE, STATE TRIAL REFEREE.