[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding is an appeal from the assessment incidental to a condemnation.
Because of the transposition of their respective names in the present action, the parties have erroneously designated the commissioner of transportation as the plaintiff and Lebov Iron Works, Inc. as the defendant. The named condemnee will be subsequently designated as "the owner," and the condemnor, the commissioner of transportation, will be subsequently designated as "the commissioner."
The premises consists as follows:
Said premises consists of a certain parcel of land and the building partially located there on situated in the Town of New Haven, County of CT Page 4305 New Haven and State of Connecticut on the southwesterly side of Present Ella Grasso Boulevard, Conn. Route 10, and the northwesterly Present Washington Avenue, containing 2,460 square feet, more or less, bounded and described as follows and shown on the map hereinafter referred to:
NORTHEASTERLY — by Present Ella Grasso Boulevard, Conn. Route 10, 222 feet, more or less; SOUTHEASTERLY — by Present Washington Avenue, 40 feet, more or less; WESTERLY AND — by Owner's remaining land, a total distance of 207 feet, more or less; SOUTHWESTERLY by a line designated "TAKING LINE", as shown on said map; NORTHWESTERLY — by Owner's remaining land, 4 feet, more or less, by a line design "TAKING LINE", as shown on said map.
Said premises are taken together with the following easements and right under, over and across portions of Owner's remaining land:
A full and perpetual easement to slope for the support of the highway within an area of 4,019 square feet more or less, located between and opposite Station 0+934.3, right, Center Line and Base Line, Present Ella Grasso Boulevard, Conn. Route 10, and Station 0+173.6 left, Center Line and Base Line, Present Washington Avenue, as shown on said map.
As easement for temporary work area and site access within an area of 25,155 square feet, more or less, located between and opposite Stations 0+835.0, right, Center Line and Base Line Present Ella Grasso Boulevard, Conn. Route 10, and 0+161.8 left, Center Line and Base Line, Present Washington Avenue, for the purpose of the removal of concrete block retaining wall and quonset hut structure and construction of a permanent earth embankment. Easement is to automatically terminate upon completion of Conn. Route 10 intersection improvements unless released sooner by the State. Temporary easement under this paragraph will be restored by removal of all temporary installations and effected area will be returned to existing conditions.
A right or entry to remove building and to install a 1.83 meter high chain link fence, as more particularly shown on said map. Said right shall terminate automatically upon completion of said work by the State.
For a more particular description of the above-described premises, reference is made to a map to be filed in the New Haven Town Clerk's Office, entitled: "TOWN OF NEW HAVEN MAP SHOWTNG LAND ACQUIRED FROM LEBOV IRON WORKS, INC. BY THE STATE OF CONNECTICUT DEPARTMENT OF TRANSPORTATION ELLA GRASSO BOULEVARD CONN. ROUTE 10 JULY 1999 JAMES F. BYRNES, JR. P.E. — TRANSPORTATION CHIEF ENGINEER BUREAU OF ENGINEERING AND HIGHWAY CT Page 4306 OPERATIONS."
The owner's appraiser's assessment was $71,000. The commissioner's appraiser assessed the loss at $46,000.
The court viewed the premises on March 1, 2002.
 "The function of the trial court in condemnation cases is to determine as nearly as possible the fair equivalent in money for the property taken. Although the market value of the taken property is ordinarily the most appropriate measure of fair compensation; (Internal quotations marks omitted.) we have long held that other measures may be appropriate when the fair market value measure of damages does not fully compensate the owner. `[T]he question of what is just compensation is an equitable one rather than a strictly legal or technical one. The paramount law intends that the condemnee shall be put in as good condition pecuniarily by just compensation as he would have been in had the property not been taken.' Colaluca v. Ives, supra.'"
Alemany v. Commissioner of Transportation, 215 Conn. 437, 444.
"Under our law, a [judge trial] referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of [the Supreme Court] with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." (Internal quotation marks omitted.) "Minicucciv. Commissioner of Transportation, supra, 211 Conn. 388; Birnbaum v.Ives, 163 Conn. 12, 21-22, 301 A.2d 262 (1972); Feigenbaum v. Waterbury,20 Conn. App. 148, 153, 565 A.2d 5 (1989).
"We have consistently departed from the fair market value measure of damages in cases of partial takings. When only a portion of a party's property is taken, the landowner is entitled not only to compensation for the value of the property taken, but also to severance damages for the diminution in the value of the landowner's remaining property that the severance of a portion of the property causes. To ensure that severance damages are included in the trial court's assessment, damages should be calculated by the CT Page 4307 "before and after rule," under which "[t]he proper measure of damages is the difference between the market value of "the whole tract' as it lay before the taking and the market value of what remained of it thereafter."
Alemany v. Commissioner of Transportation, 215 Conn. 437, 447. (Internal quotation marks omitted.)
 "The "highest and best use' concept, chiefly employed as a starting point in estimating the value of real estate by appraisers, has to do with the use which will most likely produce the highest market value, greatest financial return, or the most profit from the use of a particular piece of real estate."
State National Bank v. Planning Zoning Commissioner, 156 Conn. 99, 101.
Both of the appraisers have rendered the highest and best use as a warehouse facility with garage improvement. The court agrees with the appraisers.
The owner's appraiser has listed elements of loss.
Element of Loss Perrelli
 Quonset hut $27,000 Site area 2400 sq. ft. 4,700 Site area — slope 5,700 Temporary loss of land use 21,900 Effect on remainder 71,900
$ 131,200
The sum of $2000 is added for relocation of a doorway. Total loss is $131,200.
The commissioner's appraiser has listed as following:
Element of Loss Nugent
Quonset hut $33,500 Site area 2400 sq. ft. 12,500 Site area — slope 3300 Temporary loss of land use 4125 Effect on remainder - 0 -
$46,000 CT Page 4308
This total is $48,000 with $2000 for relocation of a doorway.
The court finds the following values:
 1. Quonset hut $33,500 2. Site area 2400 sq. ft. 12,500 3. Site area — slope 5,000 4. Temporary loss of land use 4,125 5. Effect on remainder — 0 — 6. Compensatory Damages 2,000
$57,125
As to number 4, the temporary loss is $4125. The owner's appraiser estimated is $21,800. The easement is set forth on the taking Map to wit:
 "EASEMENT FOR TEMP WORK AREA AND SITE ACCESS FOR THE PURPOSE OF THE REMOVAL OF CONCRETE BLOCK RETAINING WALL AND QUONSET HUT STRUCTURE AND CONSTRUCTION OF A PERMANENT EARTH EMBANKMENT. EASEMENT IS TO AUTOMATICALLY TERMINATE UPON COMPLETION OF CONN. ROUTE 10 INTERSECTION IMPROVEMENTS UNLESS RELEASED SOONER BY THE STATE TEMPORARY EASEMENT UNDER THIS PARAGRAPH WILL BE RESTORED BY REMOVAL OF ALL TEMPORARY INSTALLATIONS AND EFFECTED AREA WILL BE RETURNED TO EXISTING CONDITIONS."
"By granting an easement, a grantor conveys to the grantee only that which is specifically expressed in the document, and retains all use of the land not inconsistent with the grantee's use and enjoyment of the easement." . . . "The rights of an easement owner and the owner of the servient tenement are correlative. Even absent a proviso in the deed restricting the grantor to noninterfering uses of the land, the law implies such restrictions. When, however, what is necessary for the use and enjoyment is uncertain, a standard of reasonableness is imposed."
Connecticut Light Power Co. v. Holson Co., 185 Conn. 436, 441, 443. (Internal quotation marks omitted.)
"The most widely accepted measure of compensation for the taking of a temporary easement appears to be the rental value of the property taken. This general rule is applied by state courts and federal courts, alike. The advantage this method offers is simplicity, particularly if a rental CT Page 4309 value per square foot can be established.
This rule provides the owner of the property affected by the easement with compensation for the restriction on his fee interest and any resulting interference with his use." Nichols on Eminent Domain Vol. 9 § 3208[2] (1999). Michigan Wisconsin Pipeline Co. v. Herbert,488 So.2d 754, 759 (La.Ct App. 1986); State v. Sun Oil Co., 390 A.2d 668, 697, 160 N.J. Sup Ct. 513.
The value of the temporary taking of the land for the work area is 25,155 sq. ft. x 2.05 per sq. ft. x 8% x 1 yr = $4,125.
The owner's appraiser appears to include as damages the following factors:
1. effect of the acquisition and easement.
2. razing of existing improvements.
3. loss of front access to the office and retail improvements.
4. changes in typographical features in conjunction with the widening of Ella Grasso Boulevard.
"The measure of damages is ordinarily the fair market value of the acquired land on the day of taking. Ibid. Where only a part of a tract of land is taken for the public use, the award will include the value of the part taken as well as any damages visited upon the remainder as a result of the taking. D'Addario v. Commissioner of Transportation, 172 Conn. 182, 184, 374 A.2d 163 (1976). In Lefebvre v. Cox, 129 Conn. 262, 265, 28 A.2d 5 (1942), we stated: "The ordinary rule for measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value." (Emphasis added.) See Andrews v. Cox, 127 Conn. 455, 17 A.2d 507 (1941). In determining the market value of the remainder after a partial taking we have said that "it is proper for the trier to consider all elements which are a natural and CT Page 4310 proximate result of the taking and which could legitimately affect the price a prospective purchaser would pay for the land.' Bowen v. Ives, 171 Conn. 231, 236, 363 A.2d 82 (1976).
Tandet v. Urban Development Commission, 179 Conn. 293, 298-99.
 "Severance damages compensate for the diminution in the fair market value of the remainder of the property owner's land, which is both unique to that land and arises as the direct and immediate result of the taking of a portion of the lands by the condemning authority."
Tolland Enterprises v. Commissioner of Transportation, 36 Conn. App. 49,58.
The owner's appraiser states that the road widening project will cause damages to the building in the project. He claims this will cause severance damages. Specifically, this will result in loss of front access to the two story office building.
A review of DOT Construction Plans in evidence as Exhibit B shows that all of the construction activity associated with this project will take place well to the east of both buildings' frontage on Ella Grasso Boulevard. That roadway is shown on the Construction Plans as well as the Taking Map, Exhibit 15, as State Rt 10. On Sheet 10 of the Construction Plans, in the area of the building labeled "1 Stry, Mas. Bldg. #420" (the one story retail structure) and the building labeled "2 Stry. Fr. #420 (the two story office building) the words "concrete steps and landings to remain, " are shown with arrows pointing to the entrance ways of the two story building. The words "new concrete walk" appear in front of both buildings along their frontage on Ella Grasso Boulevard.
The street line, shown as "Approximate Highway Line." shows that the steps in front of said building encroach the state highway. The true highway is 80 feet as shown on 3 maps which coincides this front line of the building and the highway line.
The owner's appraiser raises the prospect of loss of parking. The Zoning Ordinance of the City of New Haven Connecticut cites Section 42, Use Table "S. Heavy construction" under the category of warehousing. Section 45 A. Key letter (i) governs parking that allows one space per 2 employees. (Ex. 16, p. 20). Zoning is not an issue.
The construction of an alternate stairwell is required and valued at CT Page 4311 $2000.
The severance damages are fixed at $2000.
The computation is as follows:
Element of Loss
 Quonset hut $33,500 Site area 2400 sq. ft. 12,500 Site area — slope 5,000 Temporary loss of land use 4,125 Effect on remainder — 0 — Severance damages $2,000
$57,125
The plaintiff may recover said loss less the amount of $37,200 or $19,925 with interest. The plaintiff is allowed the amount of $4500 and $1100 for appraiser's report and court appearances.
Costs are allowed.
Robert P. Burns, Judge Trial Referee